UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 15-10381-LTS |
| | ) |
| FULVIO FLETE-GARCIA, | ) |
| Defendant. | ) |
| | ) |

MEMORANDUM AND ORDER ON MOTION FOR RELIEF
PURSUANT TO 28 U.S.C. § 2255 (DOC. NO. 311)

December 30, 2020

SOROKIN, J.

Fulvio Flete-Garcia, having pled guilty mid-trial to crimes arising from his participation in a tax fraud scheme, and having failed in his efforts to undo his plea before this Court and the First Circuit on direct appeal, has now filed a Motion to Vacate and Set Aside Sentence Under 28 U.S.C. § 2255.  Doc. No. 311.[1]  He challenges the effectiveness of his trial counsel in the context of the partial trial and in connection with his guilty plea, accuses the government of having presented false evidence to the Court, and claims to have discovered new evidence of his innocence.  Id.; Doc. No. 312.  The government opposed the motion, Doc. No. 318, and Flete-Garcia replied, Doc. No. 322.  After considering the parties' submissions, as well as the record of Flete-Garcia's trial, plea, and sentencing, the Court DENIES Flete-Garcia's motion.  Put simply, nothing before this Court permits Flete-Garcia to escape his own under-oath statements made during his guilty plea colloquy or justifies revisiting claims previously rejected both by this Court and the First Circuit.

---

[1] Citations to items appearing on the Court's electronic docket ("Doc. No. __ at __") reference the document and page numbers assigned by ECF.

I.     BACKGROUND

A.     Factual and Procedural History

The First Circuit previously summarized the background of this case as follow:

For over half a decade, Flete-Garcia orchestrated and operated a lucrative tax-faud conspiracy.   To further this criminal enterprise, Flete-Garcia stole personal identification information (PII) from Puerto Rico residents and used this information to prepare and file fraudulent federal income tax returns.   These fraudulent returns generated refund checks, which Flete-Garcia deposited (through intermediaries) for his own benefit.

*        *        *

The plucked chickens eventually came home to roost.   On March 9, 2017, a federal grand jury sitting in the District of Massachusetts returned a 48 count superseding indictment charging Flete-Garcia with conspiracy to defraud the United States (count 1); access device fraud (counts 2 and 3); conversion of government property (counts 4 through 20); aggravated identity theft (counts 21 through 37); and money laundering (counts 38 through 48).   Flete-Garcia initially maintained his innocence, a jury was empaneled, and trial commenced on July 10, 2017.   During the first four days of trial, the government presented the bulk of its evidence (including nineteen of twenty-three witnesses), and Flete-Garcia cross-examined nearly all of the government's witnesses.   As the fourth day of trial wound down, Flete-Garcia indicated that he wished to change his plea.   He told the court that no one had pressured him into this decision but, rather, he had "started thinking about [his] family."

The district court engaged in a careful change-of-plea colloquy, and Flete-Garcia admitted his guilt with respect to all 48 counts.   Once the court accepted the plea, it discharged the jury.

Shortly thereafter, Flete-Garcia retained new counsel. . . .

Flete-Garcia's new lawyer filed a flurry of motions.   These filings included a motion to withdraw Flete-Garcia's guilty plea, a motion to compel discovery, and a motion for an evidentiary hearing to determine the amount of loss. . . .

On December 18, 2017, the district court denied Flete-Garcia's motion for an evidentiary hearing concerning amount of loss.   Two days later, the court convened the disposition hearing.   At that time, it heard and denied Flete-Garcia's remaining motions, including his motion to withdraw his guilty plea and his motion to compel discovery.   The court also heard and rejected Flete-Garcia's renewed arguments as to why an evidentiary hearing would be useful in determining amount of loss.

*        *        *

2

> The district court proceeded to sentence Flete-Garcia to a downwardly variant 132-month term of immurement and ordered him to make restitution in the amount of $7,737,486.10.

United States v. Flete-Garcia, 925 F.3d 17, 22-23 (1st Cir. 2019) (footnotes and citations omitted).

Raymond Gillespie, an experienced criminal defense attorney, represented Flete-Garcia at trial and when he entered his guilty plea.[2]  The lawyer Flete-Garcia retained after his plea represented him for his timely direct appeal and continues to represent him now.  On direct appeal, Flete-Garcia challenged this Court's rejection of his attempt to withdraw his guilty plea, levied a number of attacks on his sentence and restitution order (some of which arose from inconsistencies Flete-Garcia perceived in the government's evidence), asserted this Court had wrongly denied him discovery about criminal charges then pending against the IRS agent who had overseen his case, and accused Gillespie of ineffectiveness.  Id. at 23-40.  On May 23, 2019, the Court of Appeals affirmed Flete-Garcia's conviction and sentence, considering and rejecting nearly all of his claims on their merits.  Id.  The only claim not so rejected was his assertion of counsel ineffectiveness, which the Court of Appeals dismissed without prejudice, explaining:

> The record is tenebrous as to critical issues, such as the content of the discovery (if any) Flete-Garcia received from trial counsel.  Nor does the record indicate either why trial counsel elected not to cross-examine [a particular government witness] or why he eschewed particular lines of inquiry when cross-examining other government witnesses.  There are both tactical and strategic considerations that may have informed trial counsel's decisions in this case, but the record sheds no light on trial counsel's thinking.  Consequently, the record does not tell us whether trial counsel's decisions, when made, were calculated stratagems or amateurish blunders.  Last – but far from least – the record affords us no insight into what discussions took place between Flete-Garcia and his trial counsel regarding his decision to change his plea.  Lacking a developed record that illuminates these critical areas, we have no principled choice but to conclude that the ineffective assistance of counsel claim is prematurely raised.

---

[2] According to the BBO's website, Gillespie has been a member of the Massachusetts bar since 1977 and has never been publicly disciplined.  He is a member of this Court's CJA Panel List.

Id. at 39-40.

On October 15, 2019, the Supreme Court denied Flete-Garcia's timely petition seeking a writ of certiorari, thereby concluding his direct appeal.  Doc. No. 308.

Flete-Garcia timely filed his § 2255 motion on October 14, 2020.  Doc. No. 311.  He supported his motion with various exhibits, a memorandum of law, and an affidavit.  Doc. Nos. 311-1, 312, 314, 319.  The following grounds are identified in Flete-Garcia's motion and, to varying extents, are argued in his memorandum:

1. Ineffectiveness of trial counsel for "failing to pursue cross-examination of witnesses or object to exhibits" and for "inadequate preparation";

2. "Newly discovered evidence" regarding discrepancies in the relevant U.S. Treasury checks, including testimony from the subsequent trial of one of Flete-Garcia's co-conspirators, "shows Flete-Garcia was actually innocent";

3. A violation of Napue v. Illinois, 360 U.S. 264 (1959), and the Fifth and Sixth Amendments arising from the Government's prejudicial opening statement and its failure to correct false testimony presented at trial and/or sentencing;

4. "Trial counsel rendered constitutionally ineffective assistance by advising Flete-Garcia to plead guilty to charges he was actually innocent of";

5. "Newly discovered evidence regarding the criminal conviction of IRS agent James Clarke for aggravated rape" establishes that Flete-Garcia was denied a fair sentencing;

6. "Trial counsel was ineffective for failing to request dismissal of a fraudulent indictment"; and

7. "Double jeopardy."

Doc. No. 311 at 2, 7, 14-16; Doc. No. 312 at 7-15.[3]

The government opposed Flete-Garcia's motion generally, argued the bulk of his challenges are foreclosed by prior rulings of this Court and the First Circuit rejecting similar or

---

[3] The sixth and seventh grounds are included at Flete-Garcia's request, but are not endorsed or argued by counsel.  Doc. No. 311 at 16.

identical challenges in connection with Flete-Garcia's sentencing and direct appeal, and responded specifically to Flete-Garcia's assertions of counsel ineffectiveness (the only claims presented here which the government views as theoretically viable in the wake of the First Circuit's decision on direct appeal). Doc. No. 318. Along with its brief, the government submitted an affidavit prepared by Gillespie, who denies having "coerce[d] or manipulate[d]" Flete-Garcia "into pleading guilty." Doc. No. 318-1 ¶ 8. According to Gillespie, the mid-trial guilty plea was precipitated by Flete-Garcia's girlfriend having said that she "would not wait for him to be released but would pursue her own life separately from him" should he be convicted and sentenced "to more than a certain number of years." Id. ¶ 4. Upon learning of this, and based on Gillespie's advice "that the only possible way he could perhaps receive a sentence within the time specified by his girlfriend was by pleading guilty . . . and accepting fully responsibility for his actions," Flete-Garcia decided to halt the trial and plead guilty. Id. ¶¶ 5-7.

Though Flete-Garcia filed a reply brief, it did not acknowledge Gillespie's description of the circumstances leading to his change of plea, nor did it address the government's assertion that Flete-Garcia's claims are substantially undermined by prior decisions in this case and statements he made under oath during his guilty plea colloquy. See generally Doc. No. 322.

## II.    LEGAL FRAMEWORK

A prisoner serving a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if: 1) "the sentence was imposed in violation of the Constitution or laws of the United States"; 2) "the court was without jurisdiction to impose such sentence"; 3) "the sentence was in excess of the maximum authorized by law"; or 4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Post-conviction relief pursuant to § 2255 is an extraordinary remedy, available only to a defendant who makes "a sufficient

showing of fundamental unfairness." Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994). The burden is on Flete-Garcia to establish by a preponderance of the evidence that he is entitled to relief. United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978). To assess whether a defendant has met this burden, a court generally must accept his factual averments as true, but "need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To make out a claim of counsel ineffectiveness warranting relief under § 2255, a defendant "must show both deficient performance by counsel and resulting prejudice." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010); accord Strickland, 466 U.S. at 687. A defendant's failure to establish either of Strickland's well-known prongs will defeat his post-conviction claim. Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006).

As the Supreme Court has emphasized, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). The "deficient performance" prong requires a showing that "counsel's representation fell below an objective standard of reasonableness" in light of "prevailing professional norms." Strickland, 466 U.S. at 687-88; accord Premo v. Moore, 562 U.S. 115, 122 (2011). This prong is satisfied only if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Courts must "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. Strickland, 466 U.S. at 689; see Cullen v. Pinholster, 563 U.S. 170, 195 (2011) ("It is rare that

6

constitutionally competent representation will require any one technique or approach." (quotation marks and alteration omitted)).  The relevant inquiry is not whether counsel was "prudent or appropriate," United States v. Cronic, 466 U.S. 648, 665 n.38 (1984), but rather whether the proceedings resulting in the defendant's conviction and sentence were fair, see Strickland, 466 U.S. at 686.

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; accord Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007).  It is not sufficient "to show that the errors had some conceivable effect on the outcome of the proceeding."  Strickland, 466 U.S. at 693; accord Gonzalez-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001). Where a defendant advances a counsel-ineffectiveness claim after pleading guilty, Strickland's prejudice requirement means he "must show that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Though counsel ineffectiveness claims often "require evidentiary hearings to develop the record fully and to ascertain communications between counsel and defendant," United States v. Liceaga, 45 F. Supp. 3d 133, 136 (D. Mass. 2014), a defendant seeking relief pursuant to § 2255 "is not entitled to an evidentiary hearing as a matter of right," David v. United States, 134 F.3d 470, 477 (1st Cir. 1998).  Rather, a § 2255 movant bears a "fairly heavy burden" of proving such a hearing is warranted.  McGill, 11 F.3d at 225.  A court may resolve a § 2255 motion without a hearing if, inter alia, the defendant's allegations "contradict the record," id., or "the district judge is thoroughly familiar with the case" after having presided over the relevant trial or change-of-plea hearing, Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988).  In the latter case, the

district judge "is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing."  McGill, 11 F.3d at 225.

Finally, a "defendant is normally bound by the representations that he himself makes in open court at the time of his plea."  United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013).  A "defendant's claim of innocence" will generally be deemed "not credible" if it follows (and contradicts) a "change-of-plea colloquy in which he acknowledged that he committed the charged offenses."  Id.

III.   DISCUSSION

Applying these legal standards, and considering the procedural history of these case, none of Flete-Garcia's claims warrant relief.  Preliminarily, the Court resolves Flete-Garcia's motion on the papers.  This Court is "thoroughly familiar with the case," having presided over the partial trial, the guilty plea hearing, and the sentencing.  Moreover, Flete-Garcia has neither requested a hearing nor supported his motion with the sort of factual showing that might plausibly require a hearing when considered in light of the record as a whole.

A.   Counsel Ineffectiveness

The Court turns first to Flete-Garcia's assertions of deficient performance by his trial counsel, which are alleged as grounds 1, 4, and 6 in his motion.  Doc. No. 311 at 2-7, 14, 16. Specifically, Flete-Garcia faults Gillespie for: not cross-examining two government witnesses through whom various documents, including checks and tax returns, were admitted during the trial regarding "significant discrepancies" in the documents "that undercut the government's trial theory"; not cross-examining a cooperating co-defendant about the same "discrepancies"; advising Flete-Garcia to plead guilty to crimes he says the evidence shows he did not commit; and failing to seek dismissal of the superseding indictment, which Flete-Garcia describes as

8

"fraudulent." Id.  He also alleges, implicitly at least, that attorney Gillespie filed to review many documents included among the government's trial exhibits.  See id. at 4 ("The point is not that a valid objection existed, but rather that competent and effective defense counsel would have reviewed the documents.").

Though the affidavit submitted by Flete-Garcia in support of his motion at least generally echoes these complaints, Doc. No. 319,[4] the statements in his affidavit directly conflict with those he made under oath to this Court at the time of his guilty plea.  In his Rule 11 colloquy, Flete-Garcia expressly confirmed: that he had "fully discussed the charges against [him] and the facts and circumstances of [his] case with" his lawyer; that he was "fully satisfied with the counsel, representation and advice given to him by [his] lawyer, Mr. Gillespie"; and that he was "pleading guilty of [his] own free will, because [he was], in fact, guilty."  Doc. No. 202 at 13-15. Flete-Garcia affirmed that he understood the elements of each offense to which he was pleading guilty—including the conversion of government property offenses charged in counts 4 through 20 of the superseding indictment—after the Court explained those elements using the draft jury instructions it had prepared for use at the conclusion of trial.  Id. at 28-30.  Thereafter, Flete-Garcia expressly admitted that he "committed the crimes that are described and alleged . . . in the first superseding indictment."  Id. at 34.  He specifically agreed he, or people with whom he had conspired, had "filed federal income tax returns using other person's Social Security numbers," had "received United States Treasury checks, issued as refunds from United States tax returns,

---

[4] In his affidavit, Flete-Garcia asserts that he "did not feel that [his] lawyer was prepared for trial"; that he "pled guilty because [he] did not have confidence that [his] lawyer was prepared for trial"; that his "lawyer was not prepared to bring out the problems" with the testimony of three cooperating witnesses; that he had not received "all the documents [he] wanted to review"; that he is "actually not guilty of the conspiracy as charged and . . . of counts 4-20," which he says his "lawyer at trial never explained" to him; and that "anxiety about [his] representation and being sent to jail made it hard . . . to focus."  Doc. No. 319 ¶¶ 3-9.

that were made out in the names of persons other than" himself, and had "sold or cashed [at least some of] those checks and received at least some of the proceeds." Id.

After further explanation from the Court and conferral with Gillespie, Flete-Garcia reaffirmed his desire to plead guilty, admitted to committing "all of the conduct that's described in the first superseding indictment," and "accept[ed]" the evidence "the Government ha[d] presented at the trial" and said it would have presented in the remainder of the trial "showing that [he] ha[d] committed these crimes." Id. at 36-37. Flete-Garcia then formally entered guilty pleas to all counts against him and expressed once more that he had done so "freely and voluntarily" because he was, "in fact, guilty." Id. at 38.

In his affidavit submitted with the government's opposition to the pending motion, Gillespie attributed Flete-Garcia's decision to plead guilty to his concern that his "girlfriend and the mother of his child . . . would not wait for him to be released" if he were convicted at trial and received a lengthy prison sentence. Doc. No. 318-1 ¶¶ 4-7. This description of the events leading to the plea is corroborated by contemporaneous statements made by both Gillespie and Flete-Garcia during the change-of-plea hearing. See Doc. No. 202 at 3 (reflecting Gillespie's statement, when notifying the Court of his client's decision, that Flete-Garcia had "thought about it" and "consulted with . . . his fiancé/girlfriend, who influences him a lot"); id. at 6 (reflecting that Flete-Garcia, after denying that his decision arose from threats or pressure of any kind, sua sponte explained that he had "started thinking about [his] family"). Despite filing a reply brief, Flete-Garcia has in no way responded to Gillespie's characterization of the impetus for the plea, nor acknowledged the support for that characterization in the record of the relevant proceedings.

In these circumstances, the Court need not linger much longer over the merits of Flete-Garcia's allegations of counsel ineffectiveness. His complaints are directly at odds with the

record, as well as the Court's own first-hand observations of the relevant proceedings.  Flete-

Garcia's criticisms of Gillespie's decision not to seek dismissal of the superseding indictment

and not to cross-examine certain witnesses (either at all, or regarding certain topics) are

substantially undermined by his contemporaneous, under-oath assurances to the Court that he

had consulted with counsel and was satisfied with his representation and his advice.[5]  His claim

that counsel advised him to plead guilty to crimes he did not commit is flatly contradicted by his

own admission of guilt during his plea colloquy.  To be clear, <u>at no point during his plea hearing</u>

<u>did Flete-Garcia even hint at dissatisfaction with his counsel</u>.  When he matter-of-factly

answered "yes" after being asked if he was satisfied with Gillespie's "counsel, representation and

advice," Flete-Garcia neither expressed nor implied in any way that he held any meaningful

reservations about Gillespie's performance—let alone suggested that Gillespie's trial

performance was the reason for his mid-trial change of plea.  This bears particular emphasis

because, as the record plainly establishes, Flete-Garcia did not hesitate to resist, question, or

express reservations about other topics covered during the colloquy.

  In sum, nothing in Flete-Garcia's submissions now—which largely repeat arguments he

has previously presented to this Court without success in other contexts—and nothing in the

record as a whole provides a means by which Flete-Garcia can escape the presumptively binding

effect of the statements he made under oath at his Rule 11 hearing.  This is so with respect to his

stated satisfaction with his attorney, his admission that he was guilty of the crimes charged, his

---

[5] Insofar as the decision not to seek dismissal of the superseding indictment is concerned, the Court has previously heard and rejected Flete-Garcia's complaint in that regard.  Doc. No. 211 at 32-37.  Nothing has transpired since then—and Flete-Garcia offers nothing in connection with the instant motion—to justify revisiting the Court's prior assessment (i.e., that attorney Gillespie acted sensibly, and not deficiently, in declining to pursue such a motion).

acceptance of the government's evidence against him, and the voluntariness of his decision to enter the plea.

Accordingly, Flete-Garcia's counsel-ineffectiveness claims are meritless.[6]

B.     Other Claims

Most of Flete-Garcia's remaining claims repeat challenges he previously raised in some form before both this Court and the Court of Appeals.  The arguments were unsuccessful before, and Flete-Garcia advances no new evidence or argument that would support a different assessment now.

Ground 2 alleges that "fraudulent U.S. Treasury checks" establish Flete-Garcia's innocence, but the supporting facts do not become "newly discovered evidence" merely because Flete-Garcia labels them so.  Doc. No. 311 at 7-14.  Flete-Garcia's catalogue of complaints regarding the testimony of his cooperating co-conspirators and the evidence pertaining to them

---

[6] Several other points bear mention.  First, the Court's own observations of Gillespie's performance from the time of his appointment through the time Flete-Garcia changed his plea did not in any way suggest that Flete-Garcia was receiving constitutionally inadequate representation.  See Doc. No. 273 at 100 (rebuffing criticisms of trial counsel's performance and stating, "[n]othing from what I saw [at trial] and what I've heard since calls me to question" the adequacy of Flete-Garcia's trial counsel).  Second, the fact that Flete-Garcia's present counsel might have conducted the defense at trial differently, or pursued different strategies, than Gillespie did is not evidence that the Constitution required a different approach.  Finally, the record contains no evidence whatsoever to support the accusation made in Flete-Garcia's papers that Gillespie failed to review or "pick up on" any documents.  E.g., Doc. No. 311 at 4, 7.  A number of the alleged discrepancies raised by Flete-Garcia here (and in previous proceedings) arise from information contained in documents that were admitted as government exhibits at trial.  There is more than one way to incorporate such information into a trial strategy.  One lawyer might cross-examine an IRS witness about them.  Another might decline to do so, wisely preferring not to give the government a chance to explain or remedy the discrepancies and choosing instead to highlight and argue the discrepancies during summation.  Here, the content of a hypothetical defense closing argument remains unknown—and is immaterial in any event— in light of Flete-Garcia's knowing and voluntary guilty plea.

were aired before this Court at sentencing, and before the First Circuit on direct appeal.[7]  E.g.,

Doc. No. 273 at 28-74.  In ground 3, Flete-Garcia accuses the government of a constitutional

violation arising from its alleged failure to correct or address testimony Flete-Garcia claims was

false.  Doc. No. 311 at 14.  This echoes complaints levied against the government before this

Court at sentencing, too.  E.g., Doc. No. 273 at 60 ("And the Government really never . . . deals

with this.  People say things, but then they don't follow through on whether it's actually

accurate.").  And in ground 5, Flete-Garcia cites as "newly discovered evidence" the criminal

conviction of an IRS agent who oversaw the investigation that resulted in Flete-Garcia's

indictment.  Doc. No. 311 at 15.  Though the conviction is a "new" event, the serious criminal

charges against the agent were known before Flete-Garcia's sentencing, formed the basis for a

motion before this Court to compel additional discovery, and were considered by the First

Circuit on Flete-Garcia's direct appeal.  This Court's previous determination that discovery

related to the agent's misconduct was immaterial to issues then pending arose from the fact that

---

[7] Flete-Garcia also cites as "new evidence" the testimony of an IRS witness under cross-examination in a related criminal trial—one over which this Court also presided, and one in which the defendant also was convicted.  Doc. No. 311 at 13; Doc. No. 312 at 12; Doc. No. 314-1.  But, as Flete-Garcia concedes, that testimony—at best—amounts to "exactly what [Flete-Garcia's] counsel argued at sentencing."  Doc. No. 312 at 13.  It simply cannot be fairly characterized as newly discovered evidence, nor as evidence proving Flete-Garcia's innocence of charges as to which he admitted his guilt.

Otherwise, Flete-Garcia relies on testimony of trial witnesses and an analysis of government trial exhibits (and not on any "new" evidence), to advance what is essentially a challenge to the sufficiency of evidence proving Flete-Garcia's guilt (which ignores his own sworn admission of guilt).  The force of Flete-Garcia's attempt to knit together discrepancies he perceives in the government's evidence in an effort to claim actual innocence is eviscerated by another piece of the government's evidence—an audio- and video-recorded conversation in which Flete-Garcia referenced procuring checks from other sources in addition to directing the preparation and submission of false tax returns yielding refund checks to which he was not entitled.  That he might have been also guilty of additional frauds beyond those charged in the superseding indictment and described by the government at trial in no way proves him innocent of the charged conspiracy.

the agent played no meaningful role in preparing the evidence offered against Flete-Garcia at trial and had not testified as a witness against Flete-Garcia; it did not turn on the fact that the agent was then only charged with, but not yet convicted of, a crime.  Doc. No. 273 at 18-19.

Two settled legal principles doom these claims.  First, as the government notes, claims that were raised and decided adversely to Flete-Garcia on direct review "may not be relitigated under a different label on collateral review" pursuant to § 2255.  United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990) (per curiam).  Because grounds 2, 3, and 5 were previously raised and rejected at sentencing on or direct review, Flete-Garcia may not relitigate them now.  And second, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."  Bousley v. United States, 523 U.S. 614, 621 (1998) (quotation marks omitted).  Flete-Garcia's failure to mount a meritorious claim of counsel ineffectiveness or to identify any other valid basis for questioning the voluntariness of his plea forecloses his remaining challenges, all of which collaterally attack his plea and conviction.

Finally, in ground 7, Flete-Garcia asserts a double jeopardy claim arising from a separate criminal case that proceeded before another session of this Court and resulted in Flete-Garcia's conviction for crimes arising from his unlawful reentry into the United States and from his theft and misuse of another person's identifying information.  See generally United States v. Flete-Garcia, 15-cr-10139-PBS, ECF No. 170 (D. Mass. Mar. 20, 2020) (discussing background of case in denying motion under § 2255 challenging that conviction and sentence).  To the extent that claim is not foreclosed by the prohibition on collateral challenges to knowing, intentional, and adequately counseled guilty pleas, it is both procedurally defaulted (as it does not appear to

have been presented by counsel to the First Circuit in Flete-Garcia's direct appeal) and meritless (for the reasons succinctly articulated in the government's opposition, Doc. No. 318 at 26).

Accordingly, none of Flete-Garcia's remaining claims merit relief.

IV.   CONCLUSION

In light of the foregoing discussion, Flete-Garcia's motion for relief pursuant to § 2255 (Doc. No. 311) is DENIED.  As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000)—in particular, given Flete-Garcia's failure to adduce any evidence that would justify setting aside the sworn representations he made during this Court's Rule 11 colloquy—no certificate of appealability shall issue, 28 U.S.C. § 2253(c).

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge